2004 UT App 37

**Joye VAN DYKE, Petitioner and Appellee,**

v.

**Wesley G. VAN DYKE, Respondent and Appellant.**

**No. 20020871–CA.**

Court of Appeals of Utah.

Feb. 20, 2004.

Stephen I. Oda, Layton, for Appellant.

Denise P. Larkin, Patterson Barking Thompson & Larkin, Ogden, for Appellee.

Before Judges DAVIS, GREENWOOD, and THORNE, Jr.

## OPINION

GREENWOOD, Judge:

¶ 1 Wesley Van Dyke (Husband) appeals from the trial court's decision to partially grant Joye Van Dyke's (Wife) Verified Petition to Modify Decree of Divorce and extend Husband's alimony payments for the length of the parties' marriage. Husband argues that Wife's chronic health problems, which formed the basis for the trial court's ruling, were foreseeable at the time of the parties' divorce decree and did not meet the definition of extenuating circumstances as set forth in the statute governing the modification of alimony. Husband also claims that because the trial court previously determined that the injuries Wife sustained in a post-divorce automobile accident did not constitute a substantial change in circumstances, her petition for increased alimony was barred under the doctrine of res judicata. Finally, Husband maintains that the trial court incorrectly determined that his annual income had nearly doubled since the parties' divorce. We remand for further proceedings.

## BACKGROUND

¶ 2 Husband and wife divorced on July 22, 1992, following a sixteen-year marriage. At the time of the divorce, both parties were employed, with Wife earning approximately $1,000 per month and Husband earning approximately $2,602 per month. Under the terms of a stipulated divorce decree, Husband agreed to pay Wife monthly alimony in the amount of $500 for a period of eight years.

¶ 3 In 1993, Wife petitioned the trial court for an increase in monthly alimony of $200 to cover a monthly medical insurance premium. During the hearing on her petition, Wife testified that she was involved in an automobile accident in 1993, which she claimed left her unable to perform her duties as a real estate agent for a period of six months. The trial court denied the petition, concluding that there had been "no substantial change contemplated under the law."

¶ 4 In 1997, Wife filed a claim for Disability Insurance benefits. Although her application was initially denied, an Administrative Law Judge (ALJ) concluded in 1999 that Wife was unable to work because she was "under a disability, as that term is defined in the Social Security Act and regulations." According to the ALJ, the medical evidence established that Wife suffered from "depression, post traumatic stress disorder, degenerative disc disease and bilateral carpal tunnel" and that she was entitled to disability benefits from May 5, 1997 until at least March 31, 2000.

¶ 5 In September of 1999, Wife again petitioned the trial court for an increase in alimony. The basis for the petition was that Wife

was no longer able to work either part-time or full-time as a result of her disability and that this amounted to a "substantial and material change." A hearing was held on May 30, 2002, in which Wife testified about her disability and her inability to support herself. Husband's testimony focused primarily on his current income and living expenses. According to Husband, his annual income was approximately $50,000, while that of his current wife was approximately $9,000.

¶ 6 On August 22, 2002, the trial court issued a memorandum decision in which it made the following finding regarding Wife's disability:

> The disability has arisen as a result of a combination of factors unrelated to any action on [Husband's] part. Those factors appear to be related to two auto accidents, a bilateral carpal tunnel syndrome, and some unresolved emotional difficulties which probably existed at the time of the marriage, but which were most probably exacerbated by subsequent events. There was also reference in the Administrative Law Judge's findings to a degenerative disc condition.

The court concluded that based on Wife's disability and her "very limited income from a federal disability pension," she had "a real need for continuing support from [Husband]."

¶ 7 With respect to Husband's ability to continue to pay alimony, the trial court found that "[Husband's] income ha[d] nearly doubled in the intervening years since the divorce." While the court acknowledged that Husband "had assumed additional responsibility for a new family," it concluded that Husband "should be able to pay continuing alimony of $400 a month" (a $100 a month reduction). Accordingly, the trial court ordered "the alimony to extend for a period of the duration of the marriage," which the court calculated to be eight years and three months.

¶ 8 Approximately one month later, Husband filed a Motion for New Trial, Relief from Judgment, and for Formal Findings of Fact and Conclusions of Law. The trial court denied this motion and Husband timely filed his notice of appeal. A few days later, the trial court entered an order requiring Husband to pay alimony in the amount of $400 a month, as of July 2000, for a period of eight years and three months.

## STANDARD OF REVIEW

■ ¶ 9 The determination to modify a divorce decree is generally reviewed under an abuse of discretion standard. *See Kelley v. Kelley*, 2000 UT App 236,¶ 20, 9 P.3d 171. However, "[q]uestions about the legal adequacy of findings of fact and the legal accuracy of the trial court's statements present issues of law, which we review for correctness, according no deference to the trial court." *In re C.K.*, 2000 UT App 11,¶ 17, 996 P.2d 1059.

## ANALYSIS

### I. The Trial Court's Basis for Modifying the Alimony Award

■ ¶ 10 Citing Utah Code Annotated section 30–3–5(7)(g)(i)–(ii) (1998), Husband first argues that because Wife's medical conditions and injuries existed prior to the parties' divorce, they did not amount to either non-foreseeable or extenuating circumstances that would justify a modification of the earlier alimony award. Section 30–3–5(7)(g)(i) provides that "[t]he court has continuing jurisdiction to make substantive changes and new orders regarding alimony based on a substantial material change in circumstances not foreseeable at the time of the divorce." Utah Code Ann. § 30–3–5(7)(g)(i) (1998).[1] Section 30–3–5(7)(g)(ii) provides that "[t]he court may not modify alimony or issue a new order for alimony to address needs of the recipient that did not exist at the time the decree was entered, unless the court finds extenuating circumstances that justify that action." *Id.* § 30–3–5(7)(g)(ii) (1998).[2] Thus,

---

1. The 2003 version of this statute renumbered *this provision as Utah Code Annotated section 30–3–5(8)(g)(i) (Supp.2003).* However, for purposes of consistency we will refer to the 1998 version of the statute.

2. The 2003 version of this statute renumbered this provision as Utah Code Annotated section

a trial court may modify an alimony order if both section 30–3–5(7)(g)(i) *and* section 30–3–5(7)(g)(ii) are satisfied.

¶ 11 In its findings, the trial court did not address whether there had been a "substantial material change of circumstances not foreseeable at the time of divorce," nor did it identify what these circumstances were. *Id.* § 30–3–5(7)(g)(i). Furthermore, the trial court failed to consider whether there were "extenuating circumstances" that justified extending alimony beyond the period set forth in the divorce decree. *Id.* § 30–3–5(7)(g)(ii). Instead, the court apparently based its ruling on its finding that Wife suffered from a permanent disability arising from factors that "appear[ed] to be related to two auto accidents, a bilateral carpal tunnel syndrome, and some unresolved emotional difficulties which probably existed at the time of the marriage, but which were most probably exacerbated by subsequent events."

¶ 12 Based on such a limited finding, it is impossible to assess the validity of Husband's claims on appeal. This court has declared that the findings in modification proceedings "should be more than cursory statements; they must be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Williamson v. Williamson,* 1999 UT App 219,¶ 9, 983 P.2d 1103 (quotations and citations omitted). In interpreting section 30–3–5(7)(g)(i), we have noted that "[b]efore the trial court can modi-

fy a divorce decree, it *must* find that there has been a 'substantial material change in circumstances not foreseeable at the time of the divorce.' " *Williamson,* 1999 UT App 219 at ¶ 8, 983 P.2d 1103 (emphasis added) (footnote omitted) (quoting Utah Code Ann. § 30–3–5(7)(g)(i)); *see also Moon v. Moon,* 1999 UT App 12,¶ 27, 973 P.2d 431. Similarly, although no Utah court has considered what constitutes "extenuating circumstances" as the term is used in section 30–3–5(7)(g)(ii), this court has held that under Utah Code Annotated section 30–3–5(7)(h) (1998),[3] a trial court "must explicitly make a finding of 'extenuating circumstances' " before alimony can be extended beyond the period of the marriage.[4] *Rehn v. Rehn,* 1999 UT App 41,¶ 14, 974 P.2d 306; *see also Kelley v. Kelley,* 2000 UT App 236,¶ 28, 9 P.3d 171.

¶ 13 In this case, it is clear that the trial court failed to adequately comply with either section 30–3–5(7)(g)(i) or section 30–3–5(7)(g)(ii). Accordingly, we remand for the entry of further findings explicitly addressing the requirements of these provisions. That is, the trial court should consider whether there is evidence of a "substantial material change of circumstances not foreseeable at the time of divorce," Utah Code Ann. § 30–3–5(7)(g)(i), and whether there is evidence of "extenuating circumstances" justifying the modification of the alimony award.[5] Utah Code Ann. § 30–3–5(7)(g)(ii). The trial court should also specifically identify those circumstances.

---

30–3–5(8)(g)(ii) (Supp.2003). However, for purposes of consistency we will refer to the 1998 version of the statute.

3. Utah Code Annotated section 30–3–5(7)(h) (1998) provides that "[a]limony may not be ordered for a duration longer than the number of years that the marriage existed unless, at any time prior to termination of alimony, the court finds extenuating circumstances that justify the payment of alimony for a longer period of time." *Id.* The 2003 version of this statute renumbered this provision as Utah Code Annotated section 30–3–5(8)(h) (Supp.2003).

4. Only once has a Utah court considered the meaning of "extenuating circumstances" in the context of an alimony proceeding. *See Kelley v. Kelley,* 2003 UT App 317, 79 P.3d 428. In *Kelley,* this court held that a couple's decision to live together as husband and wife after their divorce

constituted an extenuating circumstance under Utah Code Annotated section 30–3–5(7)(h) (1998), thereby allowing alimony payments to extend beyond the period of the parties' marriage. *See Kelley,* 2003 UT App 317 at ¶¶ 6–7, 79 P.3d 428. While the holding in *Kelley* provides little guidance on what would constitute extenuating circumstances in the instant case, Judge Davis noted in his dissent that "a more typical extenuating circumstance is one which implicates the physical health, mental health, or well-being of a spouse." *See id.* at ¶ 15 (Davis, J., dissenting).

5. Because Husband specifically challenges the trial court's finding that his income nearly doubled since the parties' divorce, the trial court should also set forth, in detail, the evidence upon which this finding was based. The court should also clarify whether it included Husband's new wife's income in its calculation.

## II. The Applicability of the Doctrine of Res Judicata

 ¶ 14 Husband also argues that because the trial court determined in 1994 that the injuries Wife sustained in a post-divorce automobile accident did not amount to a substantial change, her petition for increased alimony is barred under the doctrine of res judicata. Because Husband has failed to adequately brief this argument, we decline to review it.

 ¶ 15 When determining whether an argument has been adequately briefed, "we look to the standard set forth in rule 24(a)(9) of the Utah Rules of Appellate Procedure." *State v. Thomas,* 961 P.2d 299, 305 (Utah 1998). This rule provides, in part, that the appellant's "argument shall contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes and parts of the record relied on." Utah R.App. P. 24(a)(9). "Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority." *Thomas,* 961 P.2d at 305.

¶ 16 Here, Husband has only cited one case, *Jense v. Jense,* 784 P.2d 1249 (Utah Ct.App.1989), to support his res judicata argument. *Jense* involved a dispute over a property settlement that was set forth in a divorce decree and only stands for the general proposition that, absent compelling reasons, parties should be able to rely on the finality of a divorce decree. *See id.* at 1253. It has little relevance to the facts of this case. We therefore decline to address Husband's res judicata argument because it has not been adequately briefed.[6]

## CONCLUSION

¶ 17 Prior to modifying the alimony award, the trial court failed to consider whether there had been a "substantial material change in circumstances not foreseeable at the time of the divorce." Utah Code Ann. § 30-3-5(7)(g)(i). The trial court also failed

to determine whether there were "extenuating circumstances" justifying the modification of the alimony award. Utah Code Ann. § 30-3-5(7)(g)(ii). Accordingly, we remand to the trial court to enter further findings regarding the requirements set forth in each of these provisions. Furthermore, we decline to consider Husband's argument that Wife's petition to modify the alimony award is barred under the doctrine of res judicata because the argument was not adequately briefed.

¶ 18 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE JR., Judges.

---

6. In so ruling, we do not determine the effect, if any, of the accident on the modification analysis on remand.