**2017 UT App 155**

## THE UTAH COURT OF APPEALS

RONALD J. NICHOLSON,
Appellant,
*v.*
PAULA ANN NICHOLSON,
Appellee.

Opinion
No. 20151021-CA
Filed August 24, 2017

Second District Court, Ogden Department
The Honorable Joseph M. Bean
No. 034900408

Samuel M. Barker and Jeffrey A. Callister, Attorneys
for Appellant

Jennifer Neeley, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and DAVID N. MORTENSEN
concurred.

CHRISTIANSEN, Judge:

¶1     Ronald J. Nicholson appeals the district court's
termination of alimony he had been receiving from his ex-wife
Paula Ann Thomas, formerly known as Paula Ann Nicholson.
The district court determined that modification of alimony was
warranted by Thomas's retirement and that termination of
alimony was proper because Nicholson's monthly income
exceeded his reasonable monthly needs. We conclude that the
court adequately considered the factors required by statute and
therefore affirm.

BACKGROUND

¶2     Nicholson and Thomas married in 1975, separated in 1999, and filed for divorce in 2003. After Nicholson and Thomas stipulated to a settlement, a decree of divorce was entered in 2008, with retroactive effect to 2007. Under that settlement, Nicholson received one parcel of real property, the proceeds from the sale of a second parcel of real property, and three vehicles; Thomas in turn received one parcel of real property subject to a mortgage and three other vehicles. Thomas also agreed to pay $850 per month in alimony to Nicholson for a period equal to the length of the marriage—32 years. The parties agreed that "alimony will be terminated upon [Nicholson's] remarriage or cohabitation, or otherwise terminated or modified upon a material change of circumstances, including without limitation the parties' retirement[.]" The stipulation was incorporated into the decree of divorce.

¶3     Upon her retirement in 2014, Thomas sought modification or termination of her alimony obligation. After a two-day hearing, the district court ruled that modification of the divorce decree was appropriate, found that Nicholson's expenses did not exceed his income, and modified the divorce decree to eliminate the alimony obligation. Nicholson timely appealed.

ISSUES AND STANDARDS OF REVIEW

¶4     Nicholson first contends that the district court erred by failing to make or enter adequate findings regarding Thomas's ability to pay alimony. Where an appellant asserts that the district court's findings are legally inadequate to support its ruling, we review for correctness. *See Fish v. Fish*, 2016 UT App 125, ¶ 5, 379 P.3d 882; *Robinson v. Robinson*, 2010 UT App 96, ¶ 7, 232 P.3d 1081.

¶5     Nicholson further contends that the district court erred "in terminating alimony based on [his] current needs and ability

to provide for those current needs when [his] needs and ability to provide have not changed since the time of the divorce." Insofar as this is a challenge to the district court's findings of fact, we review for clear error; where the district court's ruling relies on its interpretation of the law, we review for correctness. *See Olsen v. Olsen*, 2007 UT App 296, ¶ 7, 169 P.3d 765.

ANALYSIS

¶6     The primary purpose of an alimony award, at least an initial one, is to "enable the receiving spouse to maintain as nearly as possible the standard of living enjoyed during the marriage and to prevent the spouse from becoming a public charge." *Paffel v. Paffel*, 732 P.2d 96, 100 (Utah 1986); *accord Connell v. Connell*, 2010 UT App 139, ¶ 9, 233 P.3d 836. To achieve this end, the Utah Code requires a court to consider several factors when calculating the appropriate amount of alimony to award:

> The court shall consider at least the following factors in determining alimony:
>
>> (i) the financial condition and needs of the recipient spouse;
>>
>> (ii) the recipient's earning capacity or ability to produce income;
>>
>> (iii) the ability of the payor spouse to provide support;
>>
>> (iv) the length of the marriage;
>>
>> (v) whether the recipient spouse has custody of minor children requiring support;

(vi) whether the recipient spouse worked in a business owned or operated by the payor spouse; and

(vii) whether the recipient spouse directly contributed to any increase in the payor spouse's skill by paying for education received by the payor spouse or enabling the payor spouse to attend school during the marriage.

Utah Code Ann. § 30-3-5(8)(a) (LexisNexis 2013).[1]

¶7 After entering an alimony award, the district court retains "continuing jurisdiction to make substantive changes and new orders regarding alimony" when it finds that there has been "a substantial material change in circumstances not foreseeable at the time of the divorce." *Id.* § 30-3-5(8)(i)(i); *accord Williamson v. Williamson*, 1999 UT App 219, ¶ 8, 983 P.2d 1103. "Once that finding has been made, the court must then consider at least the following factors in determining [a new alimony award]: (i) the financial condition and needs of the recipient spouse; (ii) the recipient's earning capacity or ability to produce income; (iii) the ability of the payor spouse to provide support; and (iv) the length of the marriage." *Williamson*, 1999 UT App 219, ¶ 8 (citation and internal quotation marks omitted). "These factors apply not only to an initial award of alimony, but also to a redetermination of alimony during a modification proceeding." *Id.*

¶8 In short, once a court has determined that modification is appropriate pursuant to section 30-3-5(8)(i)(i), it must then

---

1. This statute has since been amended in a manner that does not affect our analysis of the issues on appeal.

consider at least the factors set forth in section 30-3-5(8)(a).[2] *See, e.g.*, *Busche v. Busche*, 2012 UT App 16, ¶ 13, 272 P.3d 748 (explaining that the substantial-change-of-circumstances determination is a threshold step to be conducted before, and separately from, consideration of the statutory factors).

## I. Thomas's Ability to Pay Alimony

¶9 Nicholson first contends that the district court's findings were "insufficient to support terminating alimony because [the court] made no findings as to [Thomas's] ability to provide continuing support."

¶10 "The standard for findings in modification proceedings is well established." *Williamson*, 1999 UT App 219, ¶ 9. The district court "must make findings on all material issues, and its failure to delineate what circumstances have changed and why these changes support the modification made in the prior divorce decree constitutes reversible error unless the facts in the record are clear, uncontroverted and only support the judgment." *Whitehouse v. Whitehouse*, 790 P.2d 57, 61 (Utah Ct. App. 1990). The findings "must be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Id.*

¶11 In this case, the district court determined that, although Thomas's retirement was foreseeable and in fact foreseen at the

---

2. *Williamson*'s list of four factors is drawn verbatim from the then-current version of the Utah Code. The relevant statute has since been expanded to seven factors and renumbered as Utah Code section 30-3-5(8)(a). The requirement that a court must consider the original four factors in a modification proceeding therefore likely applies with equal force to the three factors that have since been added. Here, however, neither party alleges that the district court erred by failing to consider the three new factors.

time of the divorce, the specific language of the parties' stipulation allowed for termination or modification of alimony based upon her retirement.[3] The court noted that Thomas had not taken an early retirement; rather, "she retired at a reasonable retirement age." The court ultimately ruled that modification was appropriate and turned to the consideration of the factors listed in section 30-3-5(8)(a). But in its analysis of the factors, the court did not enter detailed written findings as to Thomas's "ability . . . to provide support." *See* Utah Code Ann. § 30-3-5(8)(a)(iii) (LexisNexis 2013).

¶12  In isolation, the failure to enter written findings quantifying a certain factor does not necessarily indicate that a district court failed to *consider* that factor; rather, the lack of specific findings may be the result of the district court's conclusion that the factor is not a "material issue[]" under the circumstances of the case at hand. *See Whitehouse*, 790 P.2d at 61 (noting the court's obligation to "make findings on all *material* issues" (emphasis added) (citation and internal quotation marks omitted)). And the district court's decision here, considered as a whole, shows that this is exactly what occurred.

¶13  The district court first determined that Nicholson did not have unmet financial needs. *See* Utah Code Ann. § 30-3-5(8)(a)(i), (ii) (requiring the court to consider the recipient spouse's financial need and ability to meet that need). As a result, the court ruled that Thomas's "income and assets are irrelevant to the [modification] inquiry." In other words, it appears the district court reasoned that, because the recipient spouse—Nicholson—had no unmet need, further consideration of and explicit findings regarding the payor spouse's ability to pay were not material to the court's analysis.

---

3. According to Nicholson's reply brief, he "does not dispute the trial court's determination that the first step to alimony modification, the substantial material change threshold, was met."

¶14 We agree with the district court's legal reasoning. Though it would have been the best practice and could have facilitated review of the decision on appeal, the district court did not first need to make explicit findings as to how much Thomas could afford to pay if there was no demonstrated financial need on Nicholson's part. *See Dobson v. Dobson*, 2012 UT App 373, ¶ 24, 294 P.3d 591 (noting that "the trial court correctly indicated that without a compelling and extraordinary reason, it could not award [the recipient spouse] more alimony than her established needs, regardless of [the payor spouse's] ability to pay"); *see also Roberts v. Roberts*, 2014 UT App 211, ¶ 14, 335 P.3d 378 (explaining that "regardless of the payor spouse's ability to pay more, the recipient spouse's demonstrated need must constitute the maximum permissible alimony award" (brackets, ellipsis, citation, and internal quotation marks omitted)); *Sellers v. Sellers*, 2010 UT App 393, ¶ 3, 246 P.3d 173 (agreeing that "unless the court determines that the party seeking alimony has insufficient income to meet his or her own needs, there is no occasion to consider the other section 30-3-5(8)(a) alimony factors"). Even in the absence of ability-to-pay findings regarding Thomas, the court's ruling here is "sufficiently detailed and include[s] enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *See Williamson*, 1999 UT App 219, ¶ 9 (citation and internal quotation marks omitted). And once the finding that Nicholson had no unmet financial needs was made, there was no other legal result possible. *See Dobson*, 2012 UT App 373, ¶ 24. We therefore conclude that, in light of its other findings, the court's limited consideration of and failure to enter specific findings about "the ability of the payor spouse to provide support" was not incorrect. *See* Utah Code Ann. § 30-3-5(8)(a)(iii).

## II. Nicholson's Need for Alimony

¶15 Nicholson also contends that "[t]he trial court erred in terminating alimony based on [his] current needs and ability to provide for those current needs when [his] needs and ability to provide have not changed since the time of the divorce." His

argument appears to be two-fold; first, that his needs were res judicata because modification proceedings had been initiated by a change in Thomas's income rather than Nicholson's needs, and second, that the court should have attempted to maintain the standard of living he enjoyed at the time of the divorce rather than his standard of living at the time of modification.

A.    Res Judicata

¶16    Nicholson asserts that the district court's modification analysis should have been limited to consideration of the alimony factor or factors in which it found a "substantial material change." He argues that "[t]he other issues and factors in an initial alimony determination . . . are still res judicata." To support this proposition, Nicholson selectively quotes *Throckmorton v. Throckmorton*, 767 P.2d 121, 123 (Utah Ct. App. 1988), which noted that "[t]he doctrine of res judicata applies in divorce actions." But Nicholson neglects to mention that, two sentences later in that opinion, this court noted, "However, the application of res judicata is unique in divorce actions because of the equitable doctrine which allows courts to reopen alimony, support, or property distributions if the moving party can demonstrate a substantial change of circumstances[.]" *Throckmorton*, 767 P.2d at 123.

¶17    In any event, Utah law requires courts to reconsider certain factors in alimony modification proceedings, even when the door to modification has been opened only by a substantial and material change in a different factor. Section 30-3-5(8)(a) of the Utah Code prescribes a procedure for calculating the appropriate amount of alimony: "The court shall consider at least the following factors in determining alimony." Because the legislature has not enacted separate procedures for initial and modification proceedings, the same procedure applies in both situations. And because the language of the statute requires a court to consider *each* of the statutory factors in the context of an alimony modification proceeding, previous findings (including those made during the initial alimony proceeding) have no

preclusive effect under the doctrine of res judicata. *See Williamson v. Williamson*, 1999 UT App 219, ¶ 8, 983 P.2d 1103 ("Once [the modification] finding has been made, the court must then consider at least the following factors in determining alimony: (i) the financial condition and needs of the recipient spouse; (ii) the recipient's earning capacity or ability to produce income; (iii) the ability of the payor spouse to provide support; and (iv) the length of the marriage." (citation and internal quotation marks omitted)); *supra* ¶ 8 note 2.

¶18    We therefore conclude that the district court did not err by considering Nicholson's need for alimony despite ruling that the substantial and material change necessitating modification was in Thomas's retirement.

B.    Time Frame for Needs Calculation

¶19    Nicholson next asserts that the district court erred by considering his financial needs at the time of the modification rather than his needs at the time of separation. Nicholson bases this assertion on the alimony statute's pronouncement that, "[a]s a general rule, the court should look to the standard of living, existing at the time of separation, in determining alimony." *See* Utah Code Ann. § 30-3-5(8)(e) (LexisNexis 2013).

¶20    As an exception to the "general rule," the statute further provides that the court "may, in its discretion, base alimony on the standard of living that existed at the time of trial." *Id.* We understand this exception to allow a court the discretion to consider the standard of living at the time the modification petition is tried. Such a reading comports with the rationale underlying alimony modification proceedings: adjustment to reflect changed financial circumstances.

¶21    Indeed, our statutes and case law provide that the court should consider both parties' situations as of the time of the modification. *See id.*; *Williamson*, 1999 UT App 219, ¶ 11. The court is not required to impoverish one party to provide the

marital standard of living to the other when such a standard could not be maintained if the parties were still married and shared their incomes. *See, e.g.*, *Earhart v. Earhart*, 2015 UT App 308, ¶ 16 n.5, 365 P.3d 719 (noting that "when a payor spouse suffers an unintentional reduction in income, splitting or sharing the pain of the shortfall is an appropriate goal for alimony modification").

¶22 We conclude that, under these circumstances, it was appropriate for the district court to base its analysis on Nicholson's current financial situation. *See e.g.*, *Williamson*, 1999 UT App 219, ¶ 11 (remanding to the district court with instructions to "consider *current* evidence of the parties' financial situations" (emphasis added)).

### III. Good Faith

¶23 Nicholson contends that the district court "erred in failing to recognize that [Thomas] was not acting in good faith when she entered into a stipulation with [Nicholson] in 2008." Nicholson did not identify this issue in his statement of the issues presented for review, did not identify a standard of review, and did not address the issue's preservation. *See* Utah R. App. P. 24(a)(5). We therefore reject this contention in its entirety.

### IV. Attorney Fees and Costs

¶24 Thomas seeks an award of attorney fees and double costs pursuant to rules 33 and 34 of the Utah Rules of Appellate Procedure. She contends that Nicholson's appeal is "undoubtedly . . . for improper purposes" and that his "argument is not grounded in fact, warranted by existing law, and is not based on a good faith argument."

¶25 Rule 33(a) requires us to award "just damages," such as single costs, double costs, or attorney fees, if we determine that an appeal "is either frivolous or for delay." An appeal is

frivolous when it "is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." Utah R. App. P. 33(b). Although Nicholson's contentions are ultimately unsuccessful, under these standards, we do not consider his contentions frivolous or for delay. Consequently, we do not award damages.[4]

CONCLUSION

¶26    The district court's consideration of Thomas's ability to pay was adequate in light of the court's determination that Nicholson had not demonstrated unmet needs. The district court did not err by analyzing the alimony modification factors set forth by statute. And the district court correctly considered the parties' situations at the time of modification rather than at the time of the divorce or separation.

¶27    Affirmed.

––––––––––

4. Rule 34(a) provides that "if a judgment or order is affirmed, costs shall be taxed against [the] appellant unless otherwise ordered." We therefore award Thomas her costs reasonably incurred on appeal.